FILED
CLERK
10/12/2012 12:23 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
FVA VENTURES, INC. d/b/a VISALUS
SCIENCES,

      Plaintiff,

   -against-

BMO HARRIS BANK, N.A. f/k/a HARRIS
BANK, N.A., CYNERGY DATA, LLC,
MONERIS SOLUTIONS, INC., and MONERIS
LLC,

    Defendants.
----------------------------------------------------------X
----------------------------------------------------------X
BMO HARRIS BANK, N.A. f/k/a HARRIS
BANK, N.A., CYNERGY DATA, LLC,
MONERIS SOLUTIONS, INC., and MONERIS
LLC,,

   Counterclaimants/Third-Party Plaintiffs

   -against-

FVA VENTURES, INC. d/b/a VISALUS
SCIENCES, and PIVOTAL PAYMENTS,
INC.,

   Counterclaim Defendant and Third-Party
          Defendant.
----------------------------------------------------------X
----------------------------------------------------------X
PIVOTAL PAYMENTS, INC.,

   Cross-claimant/Third-Party Plaintiff,

   -against-

FVA VENTURES, INC. d/b/a VISALUS
SCIENCES, and BLYTH, INC.,

   Cross-Claim Defendant and Third-Party
          Defendant
----------------------------------------------------------X

**ORDER**
12-cv-02876 (ADS)(ARL)

1

**APPEARANCES:**

**Alston & Bird LLP**
*Attorneys for the Plaintiff and Third-Party Defendant FVA Ventures, Inc. d/b/a Visalus Sciences and Third-Party Defendant Blyth, Inc.*
90 Park Avenue
New York, NY 10016
    By: John Patrick Doherty, Esq.
        Michael Peter De Simone, Esq.
        Nicholas H Lynton, Esq., Of Counsel


**Akerman Senterfitt LLP**
*Attorneys for the Defendants and Third-Party Plaintiffs BMO Harris Bank, N.A., Cynergy Data, LLC, Moneris Solutions, Inc., and Moneris LLC*
335 Madison Avenue
Suite 2600
New York, NY 10017
    By: Scott Michael Kessler, Esq., Of Counsel

**Cowan, DeBaets, Abrahams & Sheppard LLP**
*Attorneys for the Third-Party Defendant and Third-Party Plaintiff Pivotal Payments, Inc.*
41 Madison Avenue
New York, NY 10010
    By: Eleanor Martine Lackman, Esq.
        Joshua Scott Wolkoff, Esq., of Counsel

**Waller Lansden Dortch & Davis, LLP**
*Attorneys for the Third-Party Defendant and Third-Party Plaintiff Pivotal Payments, Inc.*
Nashville City Center
511 Union Street
Suite 2700
Nashville, TN 37219
    By: Derek Edwards, Esq.
        Heather Hubbard, Esq., of Counsel

**SPATT, District Judge**.

Presently before the Court is a motion by Pivotal Payments, Inc. ("Pivotal"), a third-party defendant and cross-claimant, for an injunction pursuant to 28 U.S.C. § 2361, to enjoin the parties to this statutory interpleader action (the "Interpleader Action") from prosecuting a

2

separate action in the Supreme Court of the State of New York, County of Queens, Commercial Division (the "State Action"). Pivotal has requested that the Court consider this motion on an expedited basis.

## I. BACKGROUND

### A. <u>Factual Background</u>

FVA Ventures, Inc., d/b/a ViSalus Sciences ("ViSalus") is a network marketing company that sells health and nutritional products through a network of independent sales distributors. ViSalus's customers can purchase its products over the internet using credit or debit cards. Thus, in order to be able to process customer payments that are made via credit and debit cards, ViSalus must contract with a third-party credit card processing company.

Two such credit card processing companies are Pivotal and Cynergy Data ("Cynergy"). Pivotal is a national merchant services provider, offering credit and debit card processing, clearing and settlement, gift/loyalty/stored value card programs, terminal management solutions, and electronic check processing services. Cynergy is also in the business of providing credit and debit card processing services to merchants, and manages a portfolio of over 100,000 merchants processing in excess of $10 billion annually.

On or about February 23, 2006, Cynergy and Pivotal entered into an "ISO Conduit Processing Agreement", which stated that Cynergy would provide credit and debit card processing services to merchant businesses that entered into merchant processing agreements with Cynergy and a Visa/Mastercard member financial institution, such as the Defendant Harris Bank. However, pursuant to the ISO Conduit Processing Agreement, Cynergy assigned to Pivotal its "position"—namely, it assigned the sole ownership, exclusive rights, title and interest in the merchant agreements.

On or about July 6, 2006, Visalus entered into such a merchant processing agreement with Cynergy, which contained an assignment to Pivotal of Cynergy's position in the merchant processing agreement.

Once the agreement with Cynergy was set to expire, ViSalus began to negotiate directly with Pivotal in connection with two new merchant processing agreements, by which Pivotal would process ViSalus's consumer sale transactions in the United States and Canada. However, according to ViSalus, it learned on September 9, 2011, that Cynergy—the entity that was previously processing transactions for ViSalus and controlled the resulting cash proceeds—had placed ViSalus's account on a "hold". In other words, Cynergy began to hold 100% of the proceeds of ViSalus's sales and refused to disburse those cash proceeds to ViSalus. For its part, ViSalus claims that it never received a coherent explanation for the magnitude of the hold, even if a small portion could be utilized to cover potential charge backs—i.e., debit and credit card transactions that could not be processed. Therefore, ViSalus signed a draft of the new merchant processing agreement with Pivotal, but only on the basis of a representation by Pivotal that if the draft agreement was signed, the "hold" would be released by Cynergy. ViSalus never received the money.

Thereafter, on September 28, 2011, ViSalus attempted to revoke its acceptance of the merchant processing agreement with Pivotal, claiming that it did not become a binding agreement merely because the draft agreement was signed. However, according to Pivotal, any attempt at revocation failed, because the agreement was already enforceable.

Furthermore, ViSalus now contends that Pivotal cannot enforce the merchant processing agreement that ViSalus signed with Cynergy on July 6, 2006. On the other hand, Pivotal claims that as an assignee of Visalus's agreement with Cynergy, it is the real party in interest and has

4

the capacity to do so. According to Pivotal, for nearly four years, it processed more than 1.3 million credit and debit card transactions submitted by ViSalus to consummate sales of its merchandise to consumers.

At issue in the context of the instant motion is the approximate $10 million that Cynergy still retains as a "hold" on ViSaluss' proceeds. ViSalus understands that Cynergy continues to hold this money at Pivotal's request based upon Pivotal's claim that it is entitled to have that money held as "security" for the alleged breach of the contract by ViSalus.

**B. Procedural History**

On November 21, 2011, Pivotal initiated a federal action against ViSalus and its corporate parent and majority shareholder, Blyth, Inc. ("Blyth"). The case was assigned to United States District Judge Sandra Feuerstein, Case No. 2:11–cv–5713 (the "2011 Federal Action"). This action was brought on the basis of ViSalus's alleged wrongful termination of the merchant processing agreement entered into with Cynergy on July 6, 2006, and the merchant processing agreement entered into with Pivotal on September 9, 2011. In short, the claims against ViSalus were for damages due to ViSalus's alleged early termination of credit card processing agreements. The claims against Blyth were premised on alleged tortious interference in connection with those agreements. The 2011 Federal Action was recently dismissed for a lack of subject matter jurisdiction, because there was no diversity between the parties.

On June 7, 2012, ViSalus initiated the present action before this Court against BMO Harris Bank, N.A. f/k/a Harris Bank, N.A., Cynergy, Moneris Solutions, Inc., and Moneris LLC (collectively "Cynergy") to assert its claims over the approximate $10 million that was being held by Cynergy (the "Disputed Funds"). ViSalus did not join Pivotal in the case.

Then, on July 12, 2012, Pivotal commenced an action against ViSalus in the Supreme Court of the State of New York in the County of Queens, Commercial Division (the "State Action"). Pivotal sued ViSalus in state court for breach of contract of the merchant processing agreements between Pivotal and ViSalus, essentially making similar claims as in the 2011 Federal Action. Pivotal brought the State Action in contemplation of the 2011 Federal Action's dismissal of the case for lack of diversity jurisdiction, choosing to initiate the action in state court rather than to intervene in the suit before this Court.

On August 17, 2012, Cynergy answered the complaint in this action and filed a third party complaint for interpleader against Pivotal. Due to Cynergy's allegation that there were adverse claims to the Disputed Funds, Cynergy indicated an intent to deposit $10,030,935.75 with the Court registry, in order to resolve the respective competing claims of ViSalus and Pivotal to the Disputed Funds. Visalus believes that is entitled to the Disputed Funds because it was wrongfully held back from the proceeds of the sales by ViSalus. Pivotal's position is that while it does not, and did not, withhold the Disputed Funds, it has exercised its rights of recoupment and set-off against the funds and thus has a security interest in them. Moreover, Pivotal denies that ViSalus owns the funds; that ViSalus is entitled to immediate possession of them; that ViSalus has a superior right to them; and that the funds are due and payable to ViSalus.

On August 22, 2012, ViSalus served a motion to dismiss the Pivotal State Action on its merits. Pivotal sought emergency relief in state court, seeking a stay of that action. On September 7, 2012, when asked by the state court whether Pivotal would simply dismiss the State Action without prejudice, it declined. The state court then denied the emergency application, only granting an adjournment of the deadline to oppose the motion to dismiss. Thus,

in the state court, Pivotal must respond to ViSalus's and Blyths' pending motions to dismiss by October 17, 2012.

Pivotal has now asked this Court for expedited resolution of its pending motion for an injunction to enjoin the State Action pursuant to 28 U.S.C. § 2361.

## II. DISCUSSION

### A. Legal Standard

The present question before the Court is whether the Court should enter an injunction, pursuant to 28 U.S.C. § 1335, restraining the State Action with respect to the Disputed Funds and the obligations with regard to the Funds.

"[I]nterpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." Fidelity Brokerage Servs., LLC v. Bank of China, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002) (citing Washington Elec. Coop. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993)). Section 1335 provides the federal district courts with jurisdiction to hear an interpleader case, and has also been interpreted to provide the elements of an interpleader claim. Section 1335 provides in pertinent part:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more . . . if
>
> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property . . . and if (2) the plaintiff has deposited such money . . . into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future

> order or judgment of the court with respect to the subject matter of the controversy.

Therefore, there are several steps to assess before the Court can determine whether it has proper jurisdiction to hear an interpleader case. First, a plaintiff alleging an interpleader action must allege that it is in possession of a single fund of value greater than $500. Bankers Trust Co. v. Manufacturers Nat. Bank of Detroit, 139 F.R.D. 302 (S.D.N.Y. 1991) (citing to State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S. Ct. 1199, 18 L. Ed. 2d 270 (1967)). Second, the plaintiff must allege "a real and reasonable fear of double liability or vexatious, conflicting claims", Washington Electric Coop., Inc., 985 F.2d at 679, against the single fund, "regardless of the merits of the competing claims." Fidelity Brokerage, 192 F. Supp. 2d at 177; see also Locals 40, 361 & 417 Pension Fund v. McInerney, No. 06 Civ. 5224, 2007 WL 80868, *3 (S.D.N.Y. Jan. 9, 2007). Finally, pursuant to the plain language of Section 1335, a plaintiff must deposit the fund with the court. See Metal Transp. Corp. v. Pac. Venture S.S. Corp., 288 F.2d 363, 365 (2d Cir. 1961) ("As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants.").

In addition, a federal district court may only take jurisdiction over an interpleader action where there are "[t]wo or more adverse claimants, of diverse citizenship." 28 U.S.C. § 1335. See Hudson Pak Establishment v. Shelter for Homeless, Inc., 224 Fed. App'x. 26, 29 (2d Cir. 2007).

> [Section 1335] has been uniformly construed to require only "minimal diversity," that is, diversity of citizenship between two or more claimants without regard to the circumstance that other rival claimants may be co-citizens. The language of the statute, the legislative purpose broadly to remedy the problems posed by multiple claimants to a single fund, and the consistent judicial interpretation tacitly accepted by Congress, persuade us that the statute requires no more.

8

Id. (quoting State Farm Fire & Cas. Co., 386 U.S. at 530, 87 S. Ct. 1199).

28 U.S.C. § 2361 provides the procedure for determination of an interpleader claim, and states in pertinent part:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.... Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

The Second Circuit has interpreted this statute to generally require a two-step procedure to decide an interpleader action. In the first step, the Court determines whether the jurisdictional requirements of Section 1335 have been met and, if it finds they have been, the Court discharges the plaintiff from liability. See New York Life Ins. Co. v. Connecticut Dev. Auth., 700 F.2d 91, 95 (2d Cir. 1983); Locals 40, 361 & 417 Pension Fund, 2007 WL 80868 at *3. In the second step, the Court adjudicates the claims among the remaining adverse parties. Id.

There are several pending motions in this case, including a motion by Cynergy to deposit the Disputed Funds and two motions to dismiss filed by ViSalus and Blyth, respectively. However, for purposes of this Order, the Court is faced with only the most pertinent and time sensitive issue—whether a permanent injunction of the State Action is warranted.

## B. As to Whether the Injunction Should be Granted

Injunctions are often times necessary in the case of statutory interpleader. "Certainly that result [of enjoining state court proceedings] is desirable, if not indispensable. If the court had no power to enjoin concurrent state court proceedings, the grant of interpleader would often create more problems than it solved." Pan American Fire & Casualty Co. v. Revere, 188 F. Supp. 474,

485 (E.D. La. 1960). It is especially useful in the case where there are already a number of other related actions pending. See 4 Moore et al., supra, § 22.04[5][a] ("Absent self-restraint of the parties, the only way to ensure that there will not be overlapping litigation is to have the interpleader court issue an injunction against other proceedings.").

The current multitude of proceedings stemming from the relevant business and contractual relationships between the entities—Cynergy, ViSalus, and Pivotal—demonstrates, at best, a lack of restraint. "By their own actions, the parties have created a headache inducing jurisdictional conflict". Glenclova Inv. Co. v. Trans-Res., Inc., Nos. 08 Civ. 7140, 11 Civ. 5602, 11 Civ. 7923, 2012 WL 2196670, at *5 (S.D.N.Y. June 14, 2012). Pivotal now asks this Court to clean up the mess that has been made, in part by entering an injunction that would enjoin the currently pending State Action.

The power to enjoin that is conferred by 28 U.S.C. § 2361 is, by its terms, discretionary. See Medeiros v. John Alden Life Ins. Co. of New York, No. 89 Civ. 1278, 1990 WL 115606, at *8 (S.D.N.Y. Aug. 10, 1990) ("A motion for an injunction pursuant to 28 U.S.C. § 2361 is committed to the discretion of the Court."). "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the United States Supreme] Court." Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287 (1970); see Medeiros, 1990 WL 115606, at *7 ("in the interest of comity, a federal court should not unnecessarily enjoin state court proceedings.").

There are several complicating matters with regard to the instant motion for an injunction. First, it is possible that it is premature to enjoin the State Action prior to the actual deposit of the Disputed Funds with the Court. Only two days ago, on October 10, 2012, Cynergy

filed a motion to deposit the Disputed Funds. In this Circuit, "a deposit [with the court of the res in controversy] or a bond is a jurisdictional prerequisite for statutory interpleader relief." Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 396 (S.D.N.Y. 2006) (internal quotation omitted); see Metal Transp. Corp. v. Pac. Venture S.S. Corp., 288 F.2d 363, 365 (2d Cir. 1961) ("As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants."); see also Citigroup, 2007 WL 102128, at *7 ("deposit of the property with the Court or the posting of a bond is considered a jurisdictional requirement for statutory interpleader under § 1335"). Until the Court reviews Cynergy's motion seeking to deposit the Disputed Funds, the Court will not have had an adequate opportunity to assess whether the jurisdictional requirements of the interpleader statute have been met. Thus, it may be imprudent for this Court to enjoin the State Action prior to determining whether this Court has proper jurisdiction over the Interpleader Action in the first instance.

Moreover, the Court notes the highly unusual nature of the motion at issue. Pivotal is, quite simply, seeking an injunction against itself. While there does not appear to be any case or rule directly forbidding such a tactic, Pivotal has also not presented the Court with any precedent to support it. See, e.g., Glenclova, 2012 WL 2196670, at *13 (expressing skepticism because "the Pedowitz firm, acting on behalf of an interpleader defendant, filed a motion against itself, as the interpleader plaintiff, and by that motion, Dalia asks the Court to use the interpleader injunction power to enjoin her from prosecuting her own case in Delaware", and subsequently denying request for an injunction). While the Court expresses no opinion at this time on whether this type of request is proper, it certainly does not constitute the typical case that is envisioned under statutory interpleader. See New York Life Ins. Co. v. Welch, 297 F.2d 787, 790 (D.C. Cir.

11

1961) ("the interpleader statute is liberally construed to protect the *stakeholder* from the expense of defending twice, as well as to protect him from double liability.") (emphasis added). More importantly, as the opposition to the instant motion emphasizes, Pivotal can obtain the relief it currently seeks—a halt to the State Action—by merely voluntarily discontinuing that action without prejudice. Pivotal has indicated to the Court that the impetus behind this motion and the claim for "expedited relief" is to avoid the litigation costs associated with defending the pending motion to dismiss the State Action. However, the simple solution to avoiding these expenses is to discontinue the case. It appears illogical that Pivotal would spend time and effort to brief the present motion for an injunction before this Court, rather than merely discontinuing the State Action, in light of its expressed desire to litigate in this forum.

One possible reason why Pivotal has declined to discontinue the State Action is that Pivotal has alleged that ViSalus has threatened to seek sanctions if Pivotal does so. Specifically, if Pivotal voluntarily dismisses the State Action, ViSalus has indicated that it will move this Court for sanctions against Pivotal for its cross-claims and request for an injunction. On the other hand, ViSalus also agrees that the dismissal of the State Action would be "the simple, efficient and direct route" (Docket Entry No. 24; see Pivotal Reply ("In one breath, Respondents say Pivotal should discontinue the State Action. In the next breath, they threaten Pivotal for costs if Pivotal does so. This is disingenuous double speak.").)

### III. CONCLUSION

Therefore, as there are several issues that must be explored before an injunction may be granted, and because there are upcoming deadlines in the State Action for Pivotal to oppose ViSalus's and Blyth's motions to dismiss, the Court finds that a hearing is necessary. The parties

are directed to appear before this Court in Courtroom 1020 on Tuesday, October 16, 2012, at 9:00am.

**SO ORDERED.**
Dated: Central Islip, New York
October 12, 2012

                                              ___*/s/ Arthur D. Spatt*___
                                              ARTHUR D. SPATT
                                          United States District Judge